| Case Number | Case Title |
|---|---|
| 3897 | 10 Sanns St Rhinelander |

| Activity | Date of Activity |
|---|---|
| SRT Call | 4-7-17 |

Narrative[1]

On April 7, 2017 Great Lakes Indian Fish and Wildlife Commission (GLIFWC) Warden Riley Brooks received a special response team (SRT) page from the Oneida County Sheriff Department at 6:53pm. The page stated that there was a possible man with a gunshot wound and that the suspect was still in the house. The Sheriff Department requested Brooks to respond to 10 Sanns St. in Rhinelander. Brooks, dressed in his issued SRT uniform, operated his issued patrol vehicle with emergency lights and siren activated to the intersection of Balsam St. and Maple St. in Rhinelander.

At that location Brooks met with other members of the SRT and put on the rest of his issued SRT equipment. Brooks then took the driver position of the BearCat emergency vehicle. Brooks operated the BearCat to the command post where he picked up more members of SRT and was debriefed on the situation. Brooks was informed that bombs may be located in the residence, a child may be deceased due to a gun shot and also that there may be another victim in the residence along with the suspect. Brooks was also shown a picture of the suspect. After being debriefed Brooks operated the BearCat down W. Davenport St. to the residence at 10 Sanns St.

While on Davenport, Brooks observed the suspect through a window on the east side of the residence that appeared to be in the kitchen area of the home. The suspect appeared to be doing something at the kitchen sink and was also observed opening and closing what appeared to be the refrigerator door. Shortly after observing the suspect Brooks lost visual of him as he left the area of the window. Brooks then operated the BearCat to Sanns St. along the west facing side of the building. Here Brooks observed a large window near the front door. As Brooks looked through the large window, Brooks believed he was looking into the living room area of the residence. Shortly after observing the living room area, Brooks observed the suspect appear in front of the window. The suspect appeared to be placing a drinking glass on a table near the window. The suspect then appeared to be looking out the window at the BearCat. The suspect then walked to the front door of the residence and opened the main door and was looking out though the screen door standing near the threshold of the doorway.

While the suspect was near the threshold of the doorway, Brooks used the Bearcat's PA system

1

| Warden Reporting | Date of Report | Exhibit Reference |
|---|---|---|
| Riley Brooks | 4-13-17 | |

*This document was produced as a result of an official Law Enforcement investigation. Contents, in whole or part, are privileged by s. 905.09, Wis. Stats., and may not be used without express permission of the Great Lakes Indian Fish & Wildlife Commission Warden service or appropriate prosecutor.*

Loduha
Exh: 4
Date: 7-30-20
Willette Court Reporting

DEF000045

and announced to the suspect that they were with the Sheriff's Department. Brooks then informed the suspect that they would like to talk to him and asked him to exit his residence. The suspect began walking down the driveway toward the BearCat. When the suspect was at approximately the middle of the driveway, Brooks told the suspect to stop, face his residence and put his hands above his head. The suspect began to turn and face his residence; however the suspect continued rotating a full 360 degrees and was again facing the BearCat. The suspect also failed to raise his hands above his head. Brooks again told the suspect to turn and face his residence. The suspect began to rotate towards his residence. When the suspect was facing his residence, Brooks told him to stop. It appeared to Brooks that he was going to continue rotating a full 360 degrees again. Brooks then told the suspect to walk backwards towards the sound of his voice. The suspect began to walk backwards. When the suspect was approximately 10 to 15 feet away from the Bearcat, Brooks told the suspect stop. Brooks then told the suspect to go down to his knees. The suspect remained standing and did not go down to his knees. SRT members then exited the rear of the BearCat to handcuff the suspect. A member of the SRT near the suspect stated that the suspect did not appear to be doing well and that he may need medical attention. The suspect was then loaded into the BearCat by SRT members. Brooks then operated the BearCat to the command post where medical personnel met them and began medical care on the suspect.

Brooks then operated the BearCat back to the front of the suspect's residence and drove up to the large window near the front door. Here Brooks could see into the living room area of the residence. Brooks observed furniture and other common household items none of which were concerning. Brooks then operated the BearCat to the south side of the residence to a window allowing him to look into the garage area. Brooks observed a door to the residence, a passenger car and other common garage items, none of which were concerning. Brook then operated the BearCat to the east side of the residence near a small porch and door. Again nothing of concern was found in this area. Brooks then operated the BearCat to the north side of the residence. Here Brooks observed some windows on the first floor and also windows to the basement area of the residence but could not see into them.

Brooks then operated the BearCat back to the command post to pick up another member of the SRT and also a member of Marathon County Sheriff's bomb squad. Brooks then operated the BearCat back to Sanns St. in front of the suspect's residence. There, the Marathon Deputy deployed a robot to search the residence for other possible threats, victims and bombs. Once the robot was deployed Brooks operated the BearCat over to the front door area of the home. Here members of SRT used a long pole from inside the BearCat to open the screen door of the residence to allow access for the robot into the home. Once the door was open, the robot made entry into the home. Nothing of concern was found by the robot. Brooks then operated the BearCat back to the command post.

Once at the command post Brooks picked up members of Langlade County's SRT. Brooks then operated the BearCat to the south side of the residence along Davenport. Members of Langlade SRT then exited the BearCat and made their way to the garage area of the house. Brooks then operated the BearCat up the driveway to the residence near the front door. Members of Oneida SRT then exited the BearCat and made their way to the front door. Members of Oneida and Langlade SRT then went in and cleared the residence while Brooks remained in the BearCat. Once the residence was clear, Brooks operated the BearCat back to the command post.


End of Report

On 04/07/2017 at approximately 1853 I, Officer Gary Loduha #339, received a Special Response Team (SRT) call out for a hostage situation with one person injured, the suspect was still in the house with a gun. I was advised that the incident location was 10 Sanns ST, Rhinelander, WI 54501 and the staging area was at the intersection of Balsam ST and Maple ST.

While en-route to the staging area I heard multiple updates over the radio of a possible explosive device and a deceased 9 year old child.

After arriving on scene, I was assigned to the quick reaction team as a member of the arrest team and staged in the rear of the bearcat. I was also informed that I may deploy into a sniper position if given the opportunity. I was provided a short briefing that there was possibly one armed suspect, one victim possibly wounded, one 9 year old possibly deceased in the garage and possible explosive devices on or inside the residence.

I was then briefed on the suspect description and advised on what he was wearing. We proceeded to conduct various reconnaissance runs of the residence to collect information on the layout of the house, yard and to observe any activity. While performing reconnaissance I observed a single male inside the residence matching the suspect's description who was later identified as SMITH, THOMAS A, 01/31/1952 in what appeared to be the kitchen. A short time later SMITH was no longer visible and we proceeded to continue to the one side of the residence.

While performing reconnaissance on the one side I observed SMITH look out a window at us. At this point, I heard an SRT member call SMITH out over the loud speaker. SMITH proceeded to follow directions over the loud speaker but appeared to be reluctant and at times did not comply with orders. SMITH had a smear of an unknown dark substance on the front of his shirt, at a distance this smear appeared to be blood.

After various orders, Smith was in a position to attempt an apprehension. Myself and other members of the arrest team exited the rear of the bearcat. As I came around the bearcat I was unsure if SMITH had any weapons or explosives on him, because of this I pointed my weapon at SMITH and ordered him to get on the ground multiple times, SMITH did not comply with my orders. After gaining no progress I proceeded to approach SMITH with my weapon still pointed at him ordering him multiple times to go to the ground, SMITH still did not comply. I proceeded to place SMITH into an escort hold ordering him to go to the ground, SMITH still did not comply. Deputy Grant and I proceeded to escort SMITH to the ground at a controlled rate of decent. Once on the ground I proceeded to place handcuffs on SMITH's left wrist. After some time Deputy Grant was able to get SMITHs right wrist to the small of his back and proceeded to place him in handcuffs.

Once SMITH was apprehended, Deputy Grant and I helped SMITH up and escorted him to cover behind the bearcat for his safety. I proceeded to search SMITH not finding anything of evidentiary value. I searched SMITH a second time to ensure he did not have any weapons or explosives on him. I then began assessing SMITH to make sure he was ok. SMITH was conscious but not answering questions. We proceeded to place SMITH in the rear of the bearcat and brought him back to the staging area to be

assessed by medical personal. Once at the staging area I assisted SMITH out of the bearcat and handed him over to paramedics.

I then returned to the bearcat and we proceeded to methodically search the outside of the residence from the bearcat for any signs of explosives or shooting victims with negative results. While doing the search I assisted in opening the front door of the residence with the breach pole from the bearcat so the bomb squad robot could search the residence.

After the bomb squad robot searched the residence we proceeded to slowly clear and search the residence not finding anything of evidentiary value.

End of Report

Officer Gary Loduha #339

Minocqua Police Department

COPY